GEORGE C. FONTAINE, JR., for Use of Traveler's
Insurance Co. v. MASON DIXON FREIGHT LINES.
—357 S. W. (2d) 631.

Eastern Section. October 21, 1961.
Certiorari Denied by Supreme Court March 7, 1962.

Campbell & Campbell, Chattanooga, for plaintiff in error.

Spears, Moore, Rebman & Williams, Chattanooga, for defendant in error.

McAMIS, P. J. This action was brought in the Circuit Court of Hamilton County by George Fontaine, Jr., for the use and benefit of Travelers Insurance Company, to recover by right of subrogation the amount paid by Travelers to plaintiff, its insured under a collision policy covering a 1958 Mercury stationwagon owned by Fontaine. The Circuit Judge, sitting without a jury, found the driver of defendant's truck guilty of negligence in stopping on the wrong side of the highway, but dismissed

the suit on the ground that plaintiff's wife who was driving the stationwagon was going too fast in rounding a sharp curve immediately before colliding with the truck. Plaintiff has appealed.

The declaration charges and the proof shows that the large truck operated by defendant's driver was proceeding up the mountain on Ochs Highway, a two lane highway, when he discovered that he had gone too far up the mountain to make a delivery. Intending to turn his truck around and go back down the mountain, he pulled into the left lane and stopped just below a sharp turn to his left. At this juncture Mrs. Fontaine, coming down the mountain on her proper side at a speed not shown to be in excess of the prevailing speed limit of 30 miles per hour, rounded the curve.

Because of the curve and dense shrubbery, Mrs. Fontaine could not see the truck until she was at the most within 143 feet of it. She then saw the truck completely blocking her side of the highway and also a car proceeding up the mountain on the other side. Upon seeing the truck she immediately applied the brakes and skidded 99 feet but was unable to stop and collided head-on with the truck causing the damages for which this suit was brought.

The learned Circuit Judge seems to have entertained the opinion that because Mrs. Fontaine, as it turned out, could not stop in time to avoid the collision after the obstruction appeared she was ipso facto guilty of proximate contributory negligence. Under substantially similar facts it has been held by the Supreme Court that a driver's failure to come within the strict requirements of the "assured clear distance" rule presents a

question for the jury and does not as a matter of law amount to proximate negligence. Halfacre v. Hart, 192 Tenn. 342, 241 S. W. (2d) 421.

In that case the plaintiff was driving down grade on the inside of a curve so sharp as to limit his vision of the highway to a distance of 60 or 70 feet. His speed was between 45 and 50 miles per hour. When he first saw defendant's car it was 60 to 70 feet in front of him and from 1½ to 2 feet on plaintiff's side of the highway. In an effort to avoid the collision he applied the brakes and skidded off on the soft shoulder of the road and went over an embankment causing the damages for which he sued.

The opinion of Mr. Justice Tomlinson in that case contains an illuminating and instructive discussion of the "assured clear distance" rule under quite similar facts and, we think, squarely overruled Sterchi Bros. Stores, Inc. v. Bird, 15 Tenn. App. 240, holding to the contrary in the same situation of a plaintiff rounding a curve in the highway. We quote from that opinion:

"The rule applied in the Sterchi Bros. case was the 'assured clear distance' rule, whereby a motorist is required to maintain a speed sufficiently slow to enable him to stop within the distance in which he can see an obstruction in the highway ahead. That rule was in force in this State at the time of the decision of the Sterchi Bros. case in January, 1932."

The opinion, 192 Tenn. p. 346, 241 S. W. (2d) p. 423 continues:

"It has been considered by the profession generally that Main St. Transfer and Storage Company v.

Smith [166 Tenn. 482, 63 S. W. (2d) 665] modified the assured clear distance rule to the extent that it is no longer true that it is negligence as a matter of law to drive an automobile at such a speed as to be unable to stop within the distance which is measured by the driver's range of vision. *Any other interpretation of Main St. Transfer and Storage Co. v. Smith seems illogical and unconvincing when thought of in connection with the right of a motorist to assume that others on the highway will be obeying the traffic laws.* This is only another way of saying that the assured clear distance rule does not apply as a matter of law where the motorist encounters a dangerous situation which in the exercise of reasonable care he had no reason to expect. It should, however, be kept in mind that this does not mean that the assured clear distance rule does not apply to obstacles which should be expected, such as, for instance, a slow horse drawn wagon or vehicle proceeding properly on the highway in the same direction as that in which the motorist is proceeding.'' (Italics ours.)

In Strickland Transp. Co. v. Douglas, 37 Tenn. App. 421, 428, 264 S. W. (2d) 233, 237, this Court speaking through Carney, J., said:

''We live in a motor age and with the tremendous increase in the number of motor vehicles using our streets and highways, a new yardstick must be used to measure the standard of due caution and reasonable care in the operation of motor vehicles on our highways. No longer can he rely on slow speed, good brakes and proper lookout ahead. The modern

motorist must not only keep a proper lookout ahead, but also must watch traffic and pedestrians on each side and to the rear. Obviously he cannot look in all directions at the same time. Formerly the exercise of due care required the motorist to drive within the range of his lights. Under existing highway conditions, a motorist would cause unbelievable havoc if he attempted to slow down or stop his car every time he was faced with the hazard of driving into a blind spot caused by the lights of an approaching car. 'New occasions teach new duties' and 'Time makes ancient good uncouth'. Hence our Courts have modified the old rule by which the conduct of motorists in the operation of motor vehicles upon our highways and streets has been measured.

"We think that the law in Tennessee today as developed by the cases of Main Street Transfer & Storage Co. v. Smith, 166 Tenn, 482, 63 S. W. (2d) 665; Virginia Avenue Coal Co. v. Bailey, 185 Tenn. 242, 205 S. W. (2d) 11; and Halfacre v. Hart, 192 Tenn. 342, 346, 241 S. W. (2d) 421, is that the assured clear distance rule does not apply where the motorist encounters a dangerous situation which in the exercise of reasonable care he had no reason to expect, and that drivers must use reasonable care under the circumstances which exist at the particular time, and the standard for such reasonable care is flexible, some occasions and sets of circumstances requiring a higher degree of care than others and that, therefore, the question of whether a plaintiff under a certain set of circumstances did or did not exercise the required standard of care is a question for the jury to determine."

In the two cases cited it was only necessary to hold that a jury question was presented as to the contributory negligence of a motorist encountering an unexpected obstruction while driving at such a speed that he could not stop within his range of vision. The difference here lies in the fact that there was no jury. Now, for the first time, we must decide whether, in a case tried without a jury, under the circumstances of this case, the plaintiff should be repelled on the ground of proximate contributory negligence. We think not for two reasons:

■ The first is that, as clearly held in the cases cited, a motorist has a right to assume that his passage will not be blocked by the illegal stopping or parking of another vehicle on the wrong side of the highway, especially in such close proximity to a sharp curve on a much traveled highway. It would be illogical and inconsistent to hold that, having that right, he must nevertheless at all times keep his car under such control that he can stop it before striking an obstruction which he has a right to assume will not be there.

■■ The second ground on which we hold the suit improperly dismissed on the theory of contributory negligence is that, by all reasonable standards, under his own testimony, the driver of defendant's truck was guilty of gross or wilful negligence. He testified that he realized he was "taking an awful chance" and that someone coming down grade around the curve might not be able to stop in time to avoid a collision but that there was not much traffic at the time and he thought he could make the turn before anyone came along. This testimony shows that he thus consciously violated T. C. A. sec. 59-820 which prohibits driving to the left side of the high-

way when approaching within 300 feet of a curve or crest of a hill as well as T. C. A. sec. 59-859 which prohibits stopping on a highway without leaving a clear view for a distance of 200 feet.

On the question of gross negligence it was said in Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 129, 178 S. W. (2d) 756, 757:

"In Stagner v. Craig, 159 Tenn. 511, 517, 19 S. W. (2d) 234, 236, since approved and followed in Consolidated Coach Co. v. McCord, 171 Tenn. 253 at page 258, 102 S. W. (2d) 53, citing other cases, 'gross' negligence was defined as, 'such entire want of care as would raise a presumption of a conscious indifference to consequences.' If one knowingly, consciously, violates a duty imposed upon him to take measures prescribed to protect the lives of others, he is guilty of more than a mere neglect to exercise ordinary care. As was said in the Stagner case, 'This, of course, means more than, on the one hand, a want of ordinary care—a common definition of negligence. And yet, it does not cross the border line of studied or deliberate intent to do the specific injury. The mental attitude is one of indifference to injurious consequences, conscious recklessness of the rights of others. Such conduct may well be characterized as wanton. Bouvier defines wanton negligence as: "A heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to another." '"

See also Shuler v. Clabough, 38 Tenn. App. 333, 274 S. W. (2d) 17, involving the illegal parking of a truck on the highway.

Although not relied upon in the reply brief, the question was made in argument that the declaration failed to charge gross negligence and, it was argued, that this omission deprives plaintiff of the right to rely upon gross negligence. The declaration in addition to setting out the facts as above outlined charges defendant with a violation of T. C. A. sec. 59-858 defining reckless driving as the "willful or wanton disregard for the safety of persons or property" on the highway.

Whether the declaration is to be construed as charging gross negligence is to be determined by whether the facts charged constitute gross negligence irrespective of the conclusion of the pleader. Shew v. Bailey, 37 Tenn. App. 40, 260 S. W. (2d) 362.

The cases, without exception, hold that unless the plaintiff has himself been guilty of gross or wanton negligence his suit may be maintained against one guilty of such negligence, i. e., that failure to exercise ordinary care will not bar the suit if the defendant was guilty of a higher degree of negligence. Inter-City Trucking Co. v. Daniels, supra; Shuler v. Clabough, supra.

For the reasons indicated the judgment must be reversed and judgment rendered for $603.51 and all costs.

Hale and Cooper, JJ., concur.